NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FRANCESCA ECHEVARRIA-NORTH,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2011-7115

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 08-3172, Judge William A. Moorman.

---

Decided: September 13, 2011

---

FRANCESCA ECHEVARRIA-NORTH, of Milford, Pennsylvania, pro se.

P. DAVIS OLIVER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. On the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES,

Deputy Director.  Of counsel on the brief was MICHAEL J. TIMINSKI, Deputy Assistant General Counsel.

———————————

Before RADER, *Chief Judge*, O'MALLEY, and REYNA, *Circuit Judges*.

PER CURIAM.

This is a veteran's benefits case in which Francesca Echevarria-North, proceeding pro se, seeks an earlier effective date for her award of service-connected benefits for bronchial asthma.  The Board of Veterans Appeals ("Board") denied her request, and the United States Court of Appeals for Veterans Claims ("Veterans Court") affirmed the Board's denial.  Because the Veterans Court did not err in finding that Ms. Echevarria-North failed to demonstrate entitlement to an earlier effective date, we *affirm*.

BACKGROUND

Ms. Echevarria-North served in the United States Air Force from 1971 until 1979.  On February 7, 2005, a VA regional office ("RO") received a cover letter and copies of a VA Form 21-4138 completed by a representative of the New Jersey Department of Military and Veterans Affairs (the "New Jersey DMVA") on behalf of Ms. Echevarria-North.  The handwriting on the form read:  "I am inquiring as to the status of a veteran's compensation claim that was filed with your office on 11/17/1999, for Upper Respiratory Infection Residual of Viral Syndrome Chronic/Bronchitis/Asthma."  Respondent's Appendix ("RA") 16.  The statement also said that "[t]his claim was stamped in at the Newark liaison [sic] office on 11/16/199[9].  Numerous inquiries inquiries [sic] have been made to your office via the Newark Liasion [sic] office to no avail (see attached cover letter)." *Id.*  The

form is dated January 24, 2005, and it bears a signature that appears to read Edna H. Jones, "Veterans Services Officer," followed by a stamp with the address of the New Jersey DMVA. *Id.* The signature is directly below a printed line stating that "I CERTIFY THAT the statements on this form are true and correct to the best of my knowledge and belief." *Id.*

In 2006, the RO granted Ms. Echevarria-North service-connected benefits for bronchial asthma at a disability rate of 30%, effective February 7, 2005. Ms. Echevarria-North appealed the RO's decision asserting that her effective date should be November 17, 1999, which is the date she contends she first filed her claim. In support of her assertion, Ms. Echevarria-North submitted a letter, dated November 17, 1999, from the New Jersey DMVA addressed to the U.S. Department of Veterans Affairs Regional Office in Newark, New Jersey. The letter indicates that certain VA forms are enclosed and includes the following text in bold and underlined: "NEW VETERAN'S COMPENSATION CLAIM FOR UPPER RESPIRATORY INFECTION RESIDUAL OF VIRAL SYNDROME/CHRONIC BRONCHITIS/ASTHMA." *Id.* Below the date of the letter is a date stamp of "NOV 19 1999." *Id.* The letter is signed by "Edna H. Jones, Veterans Service Officer, Hudson County District." *Id.*

The Board denied Ms. Echevarria-North's request for an earlier effective date, finding that "there is no evidence showing VA received a claim, formal or informal, for service connection for bronchial asthma prior to February 7, 2005," including no evidence that it received the November 17, 1999 New Jersey DMVA letter. RA 15. Although the letter had a date stamp of "NOV 19 1999," the Board compared the date stamp on that letter to the date stamp used by the RO in Newark and concluded that

the stamp on the letter was not an RO date stamp.[1] Accordingly, the stamp was not evidence that the RO received the letter.

Ms. Echevarria-North appealed the Board's decision to the Veterans Court, arguing, among others, that the Board: (1) failed to apply the presumption of regularity to the New Jersey DMVA, contending that there is a presumption that the New Jersey DMVA mailed the November 17, 1999 letter as part of its regular course of business; and (2) lacked a plausible basis for determining that certain informal communications did not constitute informal claims. As to the first argument, the Veterans Court found that, even if the presumption of regularity applied to the New Jersey DMVA, it would not affect the Board's conclusion that the RO never *received* the letter. The court described the issue as whether the presumption of receipt under the common law mailbox rule can be invoked in this case. It concluded that the presumption of receipt could not be invoked, "[g]iven the Board's thorough discussion of the evidence, the parties' arguments, and review of the record before the Court." *Echevarria-North v. Shinseki*, No. 08-3172, 2011 WL 195531 *2 (Vet. App. Jan. 21, 2011) (hereinafter, the "*Veterans Court Decision*").

The Veterans Court rejected Ms. Echavarria-North's second argument for the same reason: because there is no evidence that the RO received her informal communications, the presumption of regularity would not affect the outcome of this case. In addition, the Veterans Court noted that the presumption of regularity applies to the RO, and in this case there is a presumption that the RO,

---

[1]    The Board believed that the date stamp was from the New Jersey DMVA liaison office indicating receipt of the letter from the New Jersey DMVA's Jersey City office.

acting in the regular course of business and following regular processes, would have placed the communications at issue in a claims file if it actually received them. Ms. Echevarria-North timely appealed to this court.

## DISCUSSION

Our review of Veterans Court decisions is limited by statute. Under 38 U.S.C. § 7292(a), we may review "the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision." Unless the appeal presents a constitutional issue, we "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2). We review legal determinations by the Veterans Court under a *de novo* standard. *See Arzio v. Shinseki*, 602 F.3d 1343, 1345 (Fed. Cir. 2010).

On appeal, Ms. Echevarria-North raises three issues, arguing that: (1) the Veterans Court failed to give the New Jersey DMVA the presumption of regularity that the VA enjoys; (2) the numerous inquiries about her claim, combined with the presumption of regularity for the New Jersey DMVA, should have been sufficient to confer an earlier effective date; and (3) the Veterans Court applied the wrong law because a case it cited, *Fithian v. Shinseki*, 24 Vet. App. 146 (2010), post-dates the Board decision. In response, the government argues that this court lacks jurisdiction because the appeal requires us to apply the law to the facts of this case. For the reasons stated below, although Ms. Echevarria-North presents some issues within our jurisdiction, we find that they are without merit.

As a starting point, the governing statute provides

that "the effective date of an award based on an original claim . . . of compensation . . . shall not be earlier than the date of receipt of application therefor." 38 U.S.C. § 5110(a). For disability compensation for direct service connection, unless the claim is received within one year of the veteran's discharge, the effective date is the "date of receipt of claim, or date entitlement arose, whichever is later." 38 C.F.R. § 3.400(b)(2)(i). The Board's determination of an effective date is a finding of fact that the Veterans Court reviews for clear error, and it is a factual determination that is unreviewable by this court. *Butler v. Shinseki*, 603 F.3d 922, 926 (Fed. Cir. 2010); *Evans v. West*, 12 Vet. App. 396, 401 (1999).

Ms. Echevarria-North's arguments relating to her effective date, and the Veterans Court's decision, turn on two related evidentiary presumptions: the presumption of regularity and the presumption of receipt pursuant to the mailbox rule. "The presumption of regularity provides that, in the absence of clear evidence to the contrary, the court will presume that public officers have properly discharged their official duties." *Miley v. Principi*, 366 F.3d 1343, 1347 (Fed. Cir. 2004) (citing *Butler v. Principi*, 244 F.3d 1337, 1339 (Fed. Cir. 2001)). "The doctrine thus allows courts to presume that what appears regular is regular, the burden shifting to the attacker to show the contrary." *Butler*, 244 F.3d at 1340 (citations omitted).

The presumption of receipt derives from the common law mailbox rule. Under the mailbox rule, "if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed." *Rios v. Nicholson*, 490 F.3d 928, 930–31 (Fed. Cir. 2007) (quoting *Rosenthal v. Walker*, 111 U.S. 185, 193

(1884)). This rule creates a rebuttable presumption of fact that the letter was received. *Rios*, 490 F.3d at 932–33 (citing *Rosenthal*, 111 U.S. at 193). The mailbox rule itself derives from the presumption of regularity because it is premised on the notion that "[p]ostal employees are presumed to discharge their duties in a proper manner." *Charlson Realty Co. v. United States*, 384 F.2d 434, 442 (Ct. Cl. 1967).

In this case, the Veterans Court explained that, as it relates to the VA, "it is presumed that VA, acting in its regular course of business and following its regular processes, would have placed such correspondence [from Ms. Echevarria-North] in her claims file and acted on it in some way – if it had actually received it." *Veterans Court Decision*, at *3 (citing *Fithian v. Shinseki*, 24 Vet. App. 146, 151 (2010)). Ms. Echevarria-North does not challenge the application of the presumption of regularity to the VA. Rather, she argues that the New Jersey DMVA, as a public agency, should be given the same presumption of regularity as it relates to mailing – i.e., a presumption that a dated letter bearing the New Jersey DMVA letterhead was actually sent, and that it was sent on the date indicated. In other words, she effectively argues for a rule of law that the presumption of regularity should serve automatically, and without more, to trigger the presumption of receipt by the VA when there is evidence of a dated letter from a public agency (here, the New Jersey DMVA letter). Because this argument involves an interpretation of a rule of law, we have jurisdiction to resolve this issue. We cannot agree, however, with Ms. Echevarria-North's position.

The presumption of regularity does not attach to every action taken by a public agency, only to those actions that, for example, are part of the agency's "official duties" or "known course of business," or that constitute

"ministerial steps." *See Rios*, 490 F.3d at 930-31 (referring to the "known course of business" of the post office); *Miley*, 366 F.3d at 1347 (referring to the presumption of regularity being used to establish that "certain ministerial steps were taken"). The question of whether the New Jersey DMVA normally sends this type of correspondence as a matter of its regular business or as a ministerial action requires background evidence, such as whether a letter sent to a liaison office automatically is forwarded to the federal VA, whether this letter simply was a draft or whether it was final, the file in which this letter was found (e.g., a claims file that would contain all sent correspondence), and the like. *See, e.g.*, *Miley*, 366 F.3d at 1347 (presumption of regularity properly applied to support that the Board mailed a notice of decision, based on factual findings about the Board's administrative practice at the time and that the notice was designated to be mailed with other documents that were in fact mailed). Whether specific evidence of an agency's normal course of business is sufficient to trigger the presumption of regularity is a factual determination beyond our jurisdiction. We decide, however, that, unless it is clear or undisputed that a certain duty is within an agency's regular course of business or simply a ministerial action, the presumption of regularity requires at least some evidence of the agency's regular course of business to support its invocation. Accordingly, we do not adopt the rule of law that Ms. Echevarria-North urges.

To the extent Ms. Echevarria-North argues that the evidence in her case otherwise is sufficient to invoke the presumption of receipt, she raises a question of fact, or an application of law to fact, that is beyond our jurisdiction. *See Savitz v. Peake*, 519 F.3d 1312, 1316 (Fed. Cir. 2008) ("Although Mr. Savitz has requested that we make an independent determination that his evidence is sufficient

to create a presumption of receipt under the mailbox rule, that is a factual determination that is not within our jurisdiction to make."). The Veterans Court in this case expressly determined that the record did not support invocation of the presumption of receipt. *Veterans Court Decision*, at \*2 ("Given the Board's thorough discussion of the evidence, the parties' arguments, and review of the record before the Court, the Court concludes that the presumption of receipt cannot be invoked in this case."). Although the Veterans Court's discussion perhaps could have been more thorough,[2] its ultimate conclusion is not within our jurisdiction to review.[3] *See Savitz*, 519 F.3d at 1316.

Finally, we reject Ms. Echevarria-North's assertion that the Veterans Court erred when it cited *Fithian v. Shinseki*, 24 Vet. App. 146 (2010), a case that post-dates the Board's decision. We treat this assertion as an argument that the Veterans Court improperly applied a point of law retroactively, but we find that this argument is without merit. The *Fithian* case only discusses the well-established presumption of regularity and relies on cases that pre-date the Board's decision for the law it applies, such as *Marsh v. Nicholson*, 19 Vet. App. 381, 285 (2005), and *Rios v. Mansfield*, 21 Vet. App. 481, 482 (2007).

---

[2]    For example, the court expressly could have considered that the same New Jersey DMVA representative appears to have signed both the 1999 letter and the 2005 statement certifying that the 1999 letter was filed, and that the New Jersey DMVA apparently submitted multiple status inquires.

[3]    To the extent Ms. Echevarria-North contends that the "numerous inquiries" about her 1999 letter constitute an informal claim, that is a factual determination beyond our jurisdiction. *See Moody v. Principi*, 360 F.3d 1306, 1310 (Fed. Cir. 2004). In addition, we note that none of these inquiries appears in the record before this court.

Thus, the Veterans Court did not error when it cited that case.

## CONCLUSION

For the reasons stated above, the decision of the Veterans Court is *affirmed*.

## COSTS

Each party shall bear its own costs.

**AFFIRMED**